Mr. Deal. Good morning. May it please the court, I'd like to focus on a recent decision by this court which I think has impact on the interpretation of Section 135b-2. That case is Adair v. Carter. It was decided February 7, 2012. In that case, I just learned of it in my rundown search in preparing for this case. It's not in my briefs. The briefs were submitted before that. Adair is a B-1 case. Adair is a B-1 case, but the language in it applies, well, if you read the language of Adair literally, it applies to 135b in general. If you think there's a relevant decision, even if your brief is already filed, you should tell it to the court's attention. My apologies, Your Honor. That's important. Okay. In 135, didn't we interpret how to, in Adair, weren't we interpreting how to show materiality? Isn't that what we were doing in Adair? That is primarily what you were doing in Adair, and there was another case that doesn't have bearing here. It was all about preparing pre-critical date claims, post-critical date claims. Right. So what in the world do you think, I guess I just don't, I don't see the relevance of them. They both happen to be 135b cases. Well, there's I mean, what we held there and what's at issue here. Well, so what the Board has done previously in its decisions is applied empowering material to 135b-2, okay, to read 120 into that language and construing the words application filed. Okay. And for the reasons stated in my brief, I believe that wasn't proper. Okay. I think it's far more proper to construe 135b-2 in a manner similar to what's construed in 135b-1. I don't think the language is different. I'll tell you, in preparation for this, I was baffled when I discovered what 132b-2 actually says and came to appreciate the language used in 135b-2 differs quite substantially from what I thought it meant. Well, it does in some respects. I thought it was supposed to be identical to b-1 except for applications as opposed to issued patents, and then I discovered, unfortunately, that's not what the language was. Well, that language is very different. You know, the Patent Office has published a paper when it first came out that, you know, apparently they don't like the way it was construed, suggested, or the way it was written, rather. Right. They suggested they need to go back. The good news is it doesn't matter for too many more cases. It doesn't matter for too many more cases, but it does matter for this case. But I think the b-1 construction is relevant to the b-2 construction because that is part of the same statute, okay? B-1 and b-2 are part of the exact same statute, 35 U.S.C. 135, and both of these establish a post... One year after the date on which the application is published. That's correct. Pretty different time frame. They're different time frames, but they have the same purpose. It's a statute of repose, which is meant to protect the patentee from future interferences, so they have the same purpose, okay? And, yes, it's a different time frame, but they both use the language as far as looking back at when a claim was filed. That language is overlapping. But you've got three board decisions against you as well. I actually think it's... Four decisions are not binding on us. They're reasonable, and why shouldn't we give indifference? Well, I don't think they're reasonable. I think that they don't... Section 120 gives an application the same meaning as if it were filed earlier. Well, Section 120 was enacted back in 1952 with Section 102, and that was done to codify patent law, which treated it that way, and there was a Supreme Court case, I think it was Godfrey v. Eves back in the 1880s, which affirmed that practice, and that was meant to codify that, and that was the purpose of 102 and 120. Okay, 135B... There's no exception in 120. It says same effect, period, and if we give it the same effect, why don't we reach the result that the board did in this case? Well, I don't... I think the answer to that is that you shouldn't... There's no need to look at 120 because the language of 135B-2 is plain and it's easily construed, and I believe what the board has done to reach a construction that they would prefer, they've implied, they've brought 120 in using imperative material. 120 and 135 both use the term application. It's the same term in the same statute, and the 120 has no limitation. It says same effect. I'm still looking for an answer to that question. Why aren't they right? But the operative word is application filed. That's the word they're modifying by using 120. And application filed, I think, has a pretty plain meaning. If there's an application filed afterwards, then it comes in... 135B-2 comes into play, okay? And what the board is doing is they're taking 120 and saying, well, we don't care when the application was filed. If there was an application filed, a parent application filed prior, okay, then 135B doesn't apply at all, okay? 135B-2 will not apply. And I think that basically reads out the protection that's meant to offer to patentees. The problem with the language of the statute is I wish we could just delete those words after the application is published. Those are the offending words, right? Because if it didn't say that, then you would be fine. Because the problem is the statute has written allow for this. I mean, you're arguing 120. It's the only argument left to you. But it's hard. Every place in the statute where it says application filed or filing date of the application, we always say effective filing date under 120 is what's to be used, even though the words effective filing date are in the statute. So you've got a very hard argument. But I'm not sympathetic. I'm sympathetic to you, though, as you can see. I think the statute... Well, the language of the statute is problematic, and it's caused problems along the way. People have been arguing this in front of the board. I actually think it's four board decisions, not three, that are against me. But I still maintain that what the board's doing is applying empirical material in order to justify reading 120N to 135B2. I think that's improper. I think the language of 135B2 is plain, and it says what it says. People don't like it, but it still says what it says. And they're going through, to me, they're jumping through hoops to try to get there. I think everywhere else in the statute where it says application for patent or application, like in 102 or things like that, you think all the other places where we look to the application date, even though we have consistently construed 120 as applying to those instances, it should nonetheless not apply here? Well, I do agree. I think that's right. And I think it's clear that it applies to 102. I mean, the overlap in the language is significant. And how does that language differ from the language in 135B2? Well, they don't use the word invention. And I set a chart out in my brief, which highlights it. It basically shows there's great overlap between 135B2 and 102 and 120, but none between 135B2 and 120. Okay, so using that, I think it's basically going back to try to redraft what Congress has written, which I think is improper. Do you want to stay the rest of your time, Mr. Deal? Thank you. Mr. Walters. Since we're talking about 135B2, let's start with that. The board's decision should simply be upheld. There was no evidence that came in that credibly showed that the language of the statute would not incorporate the provisions of 120. But it defeats the purpose of the statute, which is to avoid stale interferences, right? Well, I think being a statute of repose is somewhat of a misnomer. The statutes 135B was never intended to be a statute of limitations. There is no set time when an interference cannot be provoked in the patent office. It does, however, create repose in the sense that you have to put your placeholder in the patent office and have that placeholder in. So when people say a statute of repose, that does not limit the timeframe when an interference can actually be declared. If you go and look back at the record, there is no testimony whatsoever. Once you've got a placeholder there, under your interpretation, I can wait for years. I can drag this process on and even allow them to make extensive preparations, maybe go into marketing, and then, boom, I'll spring out of the woodwork with my interference, right? That is correct. You can do that because you can rely on past claims. Is that what you want? You're almost encouraging this kind of laying in the weeds. Well, it is a system that we've been living under, under 135B1, for a long, long time. But 135B1 makes you do it within a year with the other patent issues. But you can go back and rely on claims that you previously cancelled under 135B1 and still provoke the interference based on those earlier claims that were presented but later cancelled. But you don't even have that situation here. That is the unique Adair situation that your colleague was referring to. That's only if you had those claims in the prior application or you had to go back. I've had an incredibly narrow exception, having just worked through that issue myself recently. But that's not even your situation here. You don't have any claim like that. These claims weren't in the earlier application or anything like that. No, but the way the statute is written is you would not go back to the earlier claims, but you can go back to the earlier application because of the provisions of 120. Here, even if you cannot see that the statute is clear that the provisions of 120 are incorporated by the clear language, of course we disagree on what's clear about the language. What's the clear language to incorporate section 120? The fact that if you go to 120 and you take out the language regarding being entitled to benefit of 112, the statute says in application … taking out the 112 part. 135 does not plainly refer to 120. Oh, I agree. There's no specific reference in 135, yes. But even if you think it's ambiguous, the language, then you should defer to the patent office in … Did you suddenly switch from a private firm to the government? It's been their argument for years, but this is a substantive patent law question. This isn't a question of procedure. Well, it is a question of policy and it seems to be a poster child. Policy, right, but the patent office doesn't have substantive rulemaking authority. So why would there be a deference to an agency without substantive rulemaking authority? It is an area where … let's assume that the language is not clear. Let's assume that. It's true in 103, 102, 112. There's lots of places where the language is presumably not clear and in every instance we've never ever deferred to the PTO in their interpretation of those things. That is not so. If you look at the Cooper case that is cited in our brief, the patent office used Chevron deference. Judge Lori was a member of that panel. They looked to the meaning of the statute. They found the statute was unclear and then the court in that panel went through and did give Chevron deference to the interpretation of the patent office. That was all about what the words conduct of proceedings meant, which was a procedural issue within the PTO where the conduct of proceedings or not and we've always deferred to the PTO on issues of procedure, i.e., the procedural implementation of their process but never on substantive issues and unless you're going to argue to me that this is an issue of procedure as opposed to substance, I don't see how we would give deference. It's an issue of policy which the courts do defer to the patent office and the policy is the one that you're raising. What other cases do you have that we defer to the patent office whenever there's an issue of policy as opposed to procedure? Well, if you go to Mead v. U.S., if you look at the Cooper Technologies case and if you look at the Vector Industries case, each of which were cited in the briefs, it looked to the language of the statute and the interpretation of the statute when the patent office is implementing that particular statute. Mr. Walters, how many cases is this going to affect? What are we talking about here? We all recognize this is a pretty limited application statute. There are very few 135B2 cases that come out of the patent office. There are very few interferences at the patent office. Given the short lifespan of interferences in general, what are we talking about here? Well, I'm not so sure that interferences have such a short lifespan because under the new provisions of the law you can go back in time so interferences could be around for another 20 years until the active cases actually fall through. So the lifespan of this could be quite a while out. I would like to turn to the issue of standing and specifically since this court does review judgments, I think we should consider what the judgment is in this interference. And if you look at the appendix at page A9 where the judgment is and specifically then at page A10, you will see that Mr. Diehl also represented that Laughlin's request for adverse judgment. In other words, Laughlin requested adverse judgment in this case and in return for that request, the board ordered judgment against Laughlin on the issue of priority and found that Laughlin's claim was unacceptable. Well, they conceded priority so that they could get up on appeal to us on this legal issue, what was interpretation of the statute. They conceded under the board's interpretation of the statute, they should lose. But they didn't think the statutory interpretation is right. So why is that any different from the multitude of claims construction cases where the stipulation of non-infringement in light of the legal interpretation of the claim? We get those every day. Because here you are going to have piecemeal prosecution of the cases. If you reverse the decision of the board right now on the 135B2 issue, they have still conceded priority in the interference. Estoppel? Pardon? Estoppel, isn't that going to prevent any piecemeal? I'm not sure I'm following the question on Estoppel. Eventually, Estoppel would prevent piecemeal. But I'm talking about this proceeding itself. If you reverse the 135B2 decision, the issue of priority will still stand because they have requested adverse judgment. They were on notice with the Patent Office that a request for adverse judgment means that it is a final action of the office requiring no further action by the office to dispose of the claim permanently. That's Board Rule 41.127A2. This is not something that they can go back and say, well, it was a conditional request for adverse judgment, or that the judgment in the interference was conditional. The judgment is final in terms of that, and they requested it. So if we go back to the Patent Office... Would you concede further after this decision rather than questioning standing now? No, I am absolutely questioning standing now because they have said to us, you're not entitled to, Ling is not entitled to be in interference because they do not have a passable claim. They didn't concede priority. They merely took a step to give us a chance to hear the case. Would that concede priority or he wouldn't be here? That request for adverse judgment is in effect a concession of priority, and the judge rendered... Why isn't Judge Schrader exactly right, Chief Judge Schrader? Why isn't it just a concession that in light of the statutory interpretation of 135B, we can't possibly win even if we can establish priority, so we concede judgment? Well, number one, the judgment itself gave priority against Laughlin in the interference and found that their claim was unpatentable. The only remaining issue in the case... The order said judgment as to the subject matter of count 1 is entered. Judgment as to the subject matter is entered against Laughlin. Furthermore, count 1 is cancelled. Claim 1 is cancelled. So, if you look at the statute for interferences under 35 U.S.C. 135A, in order to have a final judgment from the Patent Office, they must decide priority of invention. Here, the only remaining issue in the interference to be decided was priority of invention, and that is when Laughlin requested adverse judgment. Again, if you have to have a patentable claim to stay involved in an interference, standing here today, the only party that has been judged not to have a patentable claim is Laughlin, not Ling. You're saying they shot themselves in the foot? Yes. And, if this case gets remanded to the Patent Office with a reversal on the 135B2 issue, the Patent Office does not necessarily have to decide the issue, because it has not been fully briefed. And under 135, the Patent Office alleviates its duty in interferences once the interference priority has been determined in the interference. They do not have to decide questions of patentability. But here, we already know that there is an unpatentable claim on Laughlin's side. They have requested adverse judgment, and that adverse judgment is permanent per the board rule. Thank you. Anything further, Mr. Walters? No, Your Honor. Thank you, Mr. Diehl. You have time remaining. Thank you, Your Honor. As far as the motion to dismiss, in my view, that's simply putting the cart before the horse. Our position is that the interference should have never been declared. The board lacks standing to do so. The regulations are very clear that standing is a threshold issue, and repose under 135 is one of those threshold issues. So our view is this case had no business being at the board at all, and that's why we're questioning. You've got to answer his point. The claim is gone now. The claim is gone. Well, if this court upholds the standing of the board, the claim is gone. But in my view, if the court says the board had no standing to make that decision in the first place, then claim one stays. It's really that simple. So to me, that's just the cart before the horse, and the questioning of our standing in this court is being questioned while we're questioning the standing of them in the court below. So I think we're entitled to ask that question as to whether the board had standing. And I wanted to point out that in my brief at A13 to 14, I have charts included which shows the overlap and lack of overlap between the three statutes, 102, 120, 135B2. And to me, that really highlights the point that there's no overlap between 120 and 135. And while the court has a long history of applying 120 to 102, I haven't seen this court apply it to 135B2. Only the board has done that. And I want to point out some of the language. The board, in my view, should have started considering the plain language of the statute. That should be their starting point. And it's very clear from some of the board decisions that that was not done. For example, in this decision, the board said, we will not impute to Congress an intent to exclude the application on 120 without some clear legislative history. To me, that's a clear indication that they didn't start with the language of the statute 135, which I submit that if you look at that, it's clear. And to me, the analysis is similar to B1. If there was a claim submitted before the critical date, they get to rely on that. If it's not submitted before the critical date, in this case, one year after publication, they don't. I think it's that simple, and I think the language says that. And all of these cases have similar limitations. For example, in the Ding v. Singer, their analysis, they state, the statutory language of 35 U.S.C. 120 is clear. They don't mention anything about 135 B2, and they go on to state, and leaves no room for adding any scenario to which 135 U.S.C. 120 does not apply. What they should have been doing is starting with the language of 135 B2 and analyzing that. And I've submitted in my brief what I think that appropriate analysis is. And frankly, it just struck me that there's no reason to do it any different, other than the critical dates, than what's done with 135 B1. Okay, it's the same language. And the language, the operative language, is that they say that it can be done... Excuse me for a minute, let me just... Only if the claim is made before one year after the date on which the application is published. Okay, and that language is in B1 and B2, or the language is very similar. There's no need to look at 120 for that, because it expressly authorizes a court or the board to look at any claim submitted before the critical date to see whether they were pursuing it or not. 120 is just not necessary in 135. But it has to be a claim that was also made in an application filed after the application is published. That's the critical language that the board relied on. Okay, but I submit that language... The language says only if the claim is made before one year after the date on which the application is published. It doesn't say where or when that claim has to have been made. Okay, but as to any application filed afterwards, if you follow the B1 analysis, you could go back and look and see if they've made that claim anywhere in a parent application prior to that critical date. If they haven't, then 135B2 bars. If they had, then it doesn't bar. And in this case, they didn't. They waited two and a half years to make that claim. Thank you, Mr. Geale. Thank you.